IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE WILDERNESS SOCIETY<br>1801 Pennsylvania Ave., NW Suite 200<br>Washington, DC 20006<br><br>      Plaintiff,<br><br>      v.<br><br>U.S. DEPARTMENT OF INTERIOR<br>1849 C. Street N.W.<br>Washington, D.C. 20240,<br><br>U.S. BUREAU OF LAND MANAGEMENT,<br>1849 C. Street N.W.<br>Washington, D.C. 20240,<br><br>U.S. DEPARTMENT OF HOUSING AND<br>URBAN DEVELOPMENT,<br>451 7th St., SW<br>Washington, D.C. 20410<br><br>      Defendants, | Case No. 26-cv-24<br><br>**COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF** |

**INTRODUCTON**

1. Plaintiff The Wilderness Society ("TWS") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the Department of Interior ("DOI"), the Department of Housing and Urban Development ("HUD"), and the Bureau of Land Management ("BLM"), an agency within DOI, to challenge Federal Defendants' unlawful withholding of records about federal efforts to sell public lands for private development and housing.

2. On March 17, 2025, the Secretaries of DOI and HUD announced a joint task force

that targets the sale of federal land for private development and housing purposes. *See* https://www.doi.gov/pressreleases/icymi-secretary-burgum-hud-secretary-turner-announce-joint-task-force-reduce-housing (last visited January 5, 2026). About a week later, BLM revealed that it was studying the sale of about 400,000 acres—625 square miles—of federal land as part of the task force. *See* https://news.bloomberglaw.com/environment-and-energy/trump-studies-selling-625-square-miles-of-federal-land-for-homes (last visited January 5, 2026). On May 19, 2025, the Secretaries of DOI and HUD met with local officials in southern Nevada, toured public lands, and announced that "[t]he joint visit underscores progress under the March 2025 HUD-DOI [Memorandum of Understanding]." *See* https://www.hud.gov/news/hud-no-25-067 (last visited January 5, 2026); *see also* https://www.youtube.com/watch?v=ZoSv29B0HWY (last visited January 5, 2026). Since that time, Federal Defendants have provided no meaningful information to the public about the task force.

3.      Federal Defendants' efforts to privatize federal lands is at odds with the overwhelming majority of the public, who support keeping public lands in public hands. Public lands are beloved by Americans of all backgrounds for recreational, aesthetic, educational, professional, scientific, and other purposes. TWS has invested significant resources in supporting its members, supporters, and partners who oppose privatization efforts. This past summer, millions of people from across the country helped stop a proposal in the budget reconciliation bill that would have mandated the sale of millions of acres of public lands for private purposes. TWS led the national coalition of organizations opposing this proposal, investing hundreds of thousands of dollars to organize and engage supporters of public lands across the country to oppose the sell-off proposals. These efforts included organizing communities and partners around affordable housing, establishing a new coalition of housing and conservation

organizations to share best practices and policies for establishing new affordable housing while protecting public lands. This new coalition developed housing and public lands principles and has begun advocating for a shared policy agenda. Several times, members of this coalition have solicited information from federal officials about these issues but Federal Defendants have largely kept their efforts secret, so there is a significant gap in public knowledge about this issue.

4. To shed light on this critical issue of public importance, in July 2025, TWS sent FOIA requests to DOI, HUD, and BLM seeking information about the joint task force and related efforts to sell federal lands for private purposes. More than 6 months have passed since TWS sent these requests but DOI, HUD, and BLM failed to provide a determination by FOIA's deadline and have yet to provide *any* responsive documents.

5. When BLM finally responded to TWS's request, it claimed that it had no responsive documents despite its public admission that it was working with DOI to study a vast swath of public lands for sale. BLM's response also directed TWS to DOI's Appraisal and Valuation Services Office (AVSO), which should have been covered by TWS's July 2025 FOIA request to DOI, but out of an abundance of caution, TWS sent a second FOIA to DOI seeking records directly from AVSO in October 2025. AVSO has yet to provide a determination on TWS's FOIA request and has yet to produce any responsive documents.

6. Federal Defendants' refusal to promptly produce responsive records frustrates FOIA's purpose of requiring agencies to provide prompt public access to agency records. Federal Defendants' extensive and continuing violations of FOIA harm TWS and its efforts to shed light on efforts to privatize public lands. Thus, TWS seeks declaratory relief that Federal Defendants violated FOIA and injunctive relief directing Federal Defendants to produce all responsive records without further delay.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including FOIA, 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. In addition, FOIA itself provides a basis for jurisdiction. 5 U.S.C. § 552(a)(4)(B).

8. Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) because TWS and Federal Defendants reside in this district.

9. The federal government waived sovereign immunity in this action pursuant to 5 U.S.C. § 552(a)(4)(B).

10. Because the Federal Defendants failed to make a timely "determination" as to TWS's FOIA requests and BLM failed to respond to TWS's appeal of BLM's final decision, TWS is deemed to have exhausted administrative remedies with respect to those requests. 5 U.S.C. § 552(a)(6)(A)(i); *id.* § 552(a)(6)(C)(i).

## PARTIES

11. Plaintiff TWS is a nonprofit organization dedicated to protecting wilderness and inspiring Americans to care for our wild places. TWS is one of America's leading public lands conservation organizations. Since 1935, TWS has been dedicated to protecting America's wild places for current and future generations, is committed to smart and sensible regulation and management of public lands. and works to ensure that public resources are used effectively, efficiently, and responsibly. TWS is headquartered in Washington, D.C. and has offices throughout the country, including but not limited to, Arizona, Colorado, California, Idaho, Montana, New Mexico, Washington, and Wyoming. TWS also has a presence on Capitol Hill. TWS has over one million members and supporters nationwide.

12. TWS works to protect public lands from privatization efforts, including efforts by Federal agencies and Congress to dispose or sell public lands for private purposes. As part of that work, TWS has attempted to learn more about the Federal Defendants' joint task force and related efforts to privatize public lands through FOIA. TWS engages in this work to protect its members' and supporters' access to public lands for outdoor recreation; the ecological and scientific value of public lands as wildlife habitat and component of continental and global biodiversity; and the integrity and continued conservation of cultural and archaeological sites on public lands, including work in concert with tribal partners. TWS's engagement in these issues supports and protects recreational, aesthetic, educational, scientific, professional, spiritual, and other interests in public lands across the country.

13. Federal Defendants' failure to comply with FOIA harms TWS's ability to provide full, accurate, and current information to its members and the public on this matter of public interest. Absent this information, TWS's mission, its campaign to keep public lands in public lands, and its members are adversely affected. The relief TWS seeks will remedy the harm Federal Defendants have caused and continue to cause to TWS and its members.

14. Defendant U.S. Department of Interior ("DOI") is an agency within the Executive Branch of the U.S. Government. Pursuant to 5 U.S.C. § 552(f), the agency is subject to FOIA's requirements because it is in the possession and control of the records sought by TWS.

15. Defendant U.S. Bureau of Land Management ("BLM") is an agency of the Department of Interior within the Executive Branch of the U.S. Government. Pursuant to 5 U.S.C. § 552(f), the agency is subject to FOIA's requirements because it is in the possession and control of the records sought by TWS.

16. Defendant U.S. Department of Housing and Urban Development ("HUD") is an

agency within the Executive Branch of the U.S. Government. Pursuant to 5 U.S.C. § 552(f), the agency is subject to FOIA's requirements because it is in the possession and control of the records sought by TWS.

## LEGAL BACKGROUND

17.     FOIA aims "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (quotation omitted). "[T]he statute does not condone agency personnel sitting behind accumulating mounds of FOIA requests and requiring each requester to 'take a number' and wait many months . . . for the agency to comply." *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 789 (D.C. Cir. 2018) (Pillard, J., concurring).

18.     FOIA requires an agency to make a "determination" as to a request within 20 working days. 5 U.S.C. § 552(a)(6)(A)(i). An agency may extend the 20-day deadline by invoking "unusual circumstances." *Id*. § 552(a)(6)(B). FOIA limits "unusual circumstances" to situations where the agency needs: to search for and collect records from places other than the office processing the request; to process a "voluminous" amount of records in a single request; or to consult with another agency or "among two or more components of the agency having substantial subject-matter interest therein." *Id.* The agency may not "specify a [new deadline] that would result in an extension for more than ten working days" unless the agency (1) "provide[s] the [requester] an opportunity to limit the scope of the request so that it may be processed within th[e] [statutory] limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request" and (2) notif[ies] the requester of the right . . . to seek dispute resolution services from the Office of Government Information Services." *Id*. § 552(a)(6)(B)(i)–(ii).

19. An agency makes a "determination" as to a request by "determin[ing] and communicat[ing] the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents." *Citizens for Responsibility and Ethics in Washington v. Fed. Election Com'n ("CREW")*, 711 F.3d 180, 186–88 (D.C. Cir. 2013). A "determination" must "inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Id*. at 188; *see also* 5 U.S.C. § 552(a)(6)(A)(i)(III). An agency does not make a "determination" when it "decide[s] to later decide"—that is, when it "express[es] a future intention to produce non-exempt documents and claim exemptions." *CREW*, 711 F.3d at 185–86. A failure to make a timely determination violates FOIA. *Hajro v. U.S. Citizenship & Immigration Servs.,* 811 F.3d 1086, 1106–07 (9th Cir. 2016).

20. An agency must make records "promptly available" after receiving a FOIA request. 5 U.S.C. § 552(a)(3)(A). To make records "promptly available," an agency should release records "within days or a few weeks" of the "determination" deadline, "not months or years." *CREW*, 711 F.3d at 188. A failure to make records "promptly available" violates FOIA. *Long v. I.R.S.,* 693 F.2d 907, 910 (9th Cir. 1982); *Judicial Watch*, 895 F.3d at 781–82.

21. Upon request, an agency must inform the requester of "an estimated date on which the agency will complete action on the request." 5 U.S.C. § 552(a)(7)(B).

22. When responding to a FOIA request, agencies must conduct "a search reasonably calculated to uncover all relevant documents." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 368 (D.C. Cir. 2020) (quoting *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); *see also* 5 U.S.C. § 552(a)(3)(C)–(D). To do so, the agency must use "methods which can be reasonably expected to produce the information requested." *Reps. Comm. for Freedom of Press v. Fed. Bureau of Investigation*, 877 F.3d 399, 400 (D.C. Cir. 2017) (quoting *Oglesby v. U.S.*


*Dep't of the Army,* 920 F.2d 57, 68 (D.C. Cir. 1990)).

23. The public has a right to appeal any adverse determination on a FOIA request within "90 days after the date of such adverse determination." 5 U.S.C. § 552(a)(6)(A)(i)(III). An agency must make a determination on an appeal within 20 working days. *Id.* § 552(a)(6)(A)(ii).

24. FOIA confers jurisdiction on federal district courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

## FACTUAL BACKGROUND

<u>U.S. Department of Interior FOIA Request No. DOI-2025-007801</u>

25. On July 2, 2025, Advocates for the West, on behalf of TWS, sent a FOIA request to DOI seeking the following records:

- A. Communications or records exchanged about the potential disposal of federal lands for housing or associated purposes (including, but not limited to, any communications about DOI's Joint Task Force for Housing) since January 20, 2025 with the following third-parties:
  - i. American Enterprise Institute, the Freedom Cities Coalition, Frontier Foundation, Charter Cities Institute, the Foundation for American Innovation, or other think tanks or foundations;
  - ii. Congressional Representatives, Senators, or Congressional staffers;
  - iii. Officials or representatives from any States, counties, or local governments, including the City of Las Vegas (Nevada), Clark County (Nevada), the City of St. George (Utah), and Governor Lombardo (Nevada);

      iv.      Native American Tribes; and

      v.      Any representatives of developers or companies, or individuals potentially interested in or available to acquire or otherwise help use federal land for housing purposes.

B. Any memoranda of understanding or other type of agreement with a third party related to disposal of public lands for housing purposes that have been signed, proposed, or drafted since January 20, 2025.

C. Any maps, memoranda, data, or other factual support for DOI's identification of approximately 400,000 acres of public land that are being or have been studied for potential disposal for housing purposes since January 20, 2025.

D. Any communications or other records exchanged with third parties related to authority under the Recreation and Public Purposes Act or other laws to sell lands for less than fair market value since January 20, 2025.

26. The same day, DOI confirmed receipt of the FOIA request and assigned it the control number DOI-2025-007801.

27. On July 16, 2025, DOI granted TWS's request for a fee waiver, classified the request as "complex," and stated that it expected twenty-one to sixty workdays would be required to process the request. DOI also claimed unusual circumstances necessitated a 10-day workday extension due to the need to collect records from field facilities or other units.

28. Between July 17, 2025, and August 18, 2025, DOI and Advocates for the West communicated via email and phone about the scope of the request and agreed upon potential custodians, search terms, and other parameters for DOI's search for records. After an inquiry via email from Advocates for the West, DOI stated via email on September 12, 2025, that it had

completed its search; subsequently stated via email on September 19, 2025, that it expected to provide an initial production of records by November 3, 2025; and subsequently stated via email on September 25, 2025, that it estimated the request would be complete by March 6, 2026.

29.     DOI has not communicated about this request, despite follow up emails from Advocates for the West, since September 25, 2025.

30.     More than 6 months have passed since Advocates for the West first submitted this request, but DOI has not provided a determination about its intention to comply or reasons for withholding documents nor produced any documents. The agency has not invoked any exemptions to justify its withholdings.

<u>U.S. Bureau of Land Management FOIA Request No. DOI-2025-007800</u>

31.     On July 2, 2025, Advocates for the West on behalf of TWS sent a FOIA request to BLM seeking the same records identified in the FOIA request to DOI described above in paragraph 25.

32.     On July 2, 2025, BLM confirmed receipt of the FOIA request via email and assigned it control number DOI-2025-007800.

33.     After hearing nothing from BLM for over 60 days, on September 5, 2025, Advocates for the West sent a follow-up email to BLM inquiring as to the status of the FOIA response. After receiving no response, Advocates for the West sent a second follow-up email on September 12, 2025. BLM finally responded via email on September 15, 2025, and stated that the request was transferred to BLM Headquarters for processing.

34.     On September 24, 2025, Advocates for the West sent a third follow-up email to BLM inquiring about the status of the FOIA response.

35.     On September 25, 2025, BLM sent a response letter to Advocates for the West

stating, "For this response, a thorough record search was conducted, and it was determined that the Bureau of Land Management (BLM) HQ has no records responsive to your request." BLM also stated that the request "should be sent to [DOI] Appraisal and Valuation Services Office (AVSO)." BLM then closed the request.

36. On October 9, 2025, Advocates for the West, on behalf of TWS, appealed BLM's final response to FOIA request No. 2025-007800. In particular, TWS appealed the adequacy of BLM's search, asserting that BLM conducted an inadequate search because BLM has publicly confirmed its role in studying and communicating with third parties about its efforts to sell public lands, so it is implausible that the agency possesses no responsive records. Additionally, BLM only searched its headquarters and not other locations where the records are likely to exist. Finally, BLM failed to promptly disclose and is unlawfully withholding all responsive records.

37. More than twenty working days have passed since the appeal was filed, but BLM has still not acknowledged or responded to the appeal despite a follow-up email from Advocates for the West on December 9, 2025.

## U.S. Department of Housing and Urban Development

### FOIA Request No. 25-FI-HQ-03256

38. On July 2, 2025, Advocates for the West on behalf of TWS sent a FOIA request to HUD seeking the same records identified in the FOIA request to DOI described above in paragraph 25.

39. The same day, HUD confirmed receipt of the FOIA request and assigned it the request number 25-FI-HQ-03256.

40. On July 17, 2025, HUD acknowledged the FOIA, invoked unusual circumstances in order to take an additional ten days to search for records within another office, and assigned it

to a "complex" track.

41.     After more than 60 days had passed without any further communication, on September 5, 2025, Advocates for the West sent a follow-up email to HUD inquiring about the status of the FOIA response.

42.     On September 8, 2025, HUD responded to the inquiry via email by stating that the request was still in the search phase. Advocates for the West followed up via email on September 9, 2025, by requesting an estimated timeline for completion, to which HUD responded via email on September 11, 2025, and stated it was unable to provide an estimated timeline for completion.

43.     Advocates for the West followed up again via email on September 12, 2025, and December 9, 2025. On December 11, 2025, HUD responded via email and again stated that it was unable to provide an estimated timeline for completion and an initial production.

44.     More than 6 months have passed since Advocates for the West first submitted this request, on behalf of TWS, but HUD has not provided a determination about its intention to comply or reasons for withholding documents nor produced any documents. The agency has not invoked any exemptions to justify its withholdings.

<u>U.S DOI Appraisal and Valuation Services Office (AVSO)</u>

<u>FOIA Request No. DOI-2025-010004</u>

45.     In BLM's final determination letter to TWS for FOIA Request DOI-2025-007800, BLM claimed that the request should be sent to DOI's Appraisal and Valuation Services Office (AVSO).

46.     Although TWS had already sent a FOIA request to DOI as a whole (and thus all offices within DOI, which includes AVSO), out of abundance of caution, TWS also sent such a FOIA request directed specifically to AVSO.

47. On September 30, 2025, Advocates for the West on behalf of TWS sent a FOIA request to AVSO seeking the same records identified in the FOIA request to DOI described above in paragraph 25. That same day, DOI confirmed receipt of the request and assigned it tracking number DOI-2025-010004.

48. On November 19, 2025, DOI responded via email and granted TWS's fee waiver request. DOI claimed the request fell into a "complex" track that generally requires twenty-one to sixty workdays to process. DOI also claimed that unusual circumstances allowed a 10-day workday extension to search for records within field facilities or other units.

49. On November 21, 2025, Advocates for the West followed up via email and highlighted that DOI had failed to provide a determination by the deadline required.

50. On November 26, 2025, DOI responded via email but did not provide an estimate of when it would complete its search, provide a determination, produce any responsive records, or complete its response to the FOIA request.

51. On December 17, 2025, Advocates for the West followed up via email and requested an update on the status of the request. On December 29, 2025, DOI responded via email and stated a response to the email would be forthcoming but did not provide an estimated date of completion, a determination, or any responsive records.

**FIRST CLAIM FOR RELIEF (DOI)**
**VIOLATION OF FOIA: FOIA REQUEST NO. DOI-2025-007801**

52. TWS realleges and incorporates by reference all preceding paragraphs.

53. TWS has a statutory right to a timely determination on its FOIA request and prompt production of requested non-exempt records. 5 U.S.C. § 552(a)(3)(A), (a)(6)(A).

54. In response to TWS's FOIA Request No. DOI-2025-007801, DOI failed to provide a determination within FOIA's twenty-day deadline. More than 6 months after receiving

the request, the agency has still not produced any responsive records nor made a final determination. The agency has not invoked any exemptions under FOIA that allow it to withhold any records nor any exemptions that allow it to delay or bypass FOIA's deadline and disclosure requirements.

55. By failing to produce all responsive records promptly, DOI has constructively denied TWS's request and is unlawfully withholding records.

56. Accordingly, DOI has violated FOIA in the following separate ways: 1) failing to provide a determination by the statutory twenty-day deadline; and 2) failing to promptly produce and unlawfully withholding responsive documents. 5 U.S.C. § 552(a)(3)(A), (a)(6)(A).

57. DOI's violations of FOIA have deprived TWS of its right to receive public records and injured TWS's interests. These violations will continue absent the relief requested herein.

58. TWS is therefore entitled to declaratory and injunctive relief holding that DOI violated FOIA and requiring the agency to promptly produce responsive records, as well as to reasonable costs of litigation and attorneys' fees.

**SECOND CLAIM FOR RELIEF (BLM)**
**VIOLATION OF FOIA: FOIA REQUEST NO. DOI-2025-007800**

59. TWS realleges and incorporates by reference all preceding paragraphs.

60. TWS has a statutory right to a reasonable search for responsive records to its FOIA request and prompt production of the non-exempt records sought. 5 U.S.C. § 552(a)(3)(A), (C), (D).

61. In response to TWS's FOIA Request No. DOI-2025-007800, BLM violated FOIA because it failed to conduct an adequate search. BLM's assertion that it has no responsive records is implausible and it reflects either an inadequate search or an improper determination

that no responsive records exist. As a result, BLM failed to promptly disclose and is unlawfully withholding all responsive records.

62. Accordingly, BLM is violating FOIA in the following separate ways: 1) failing to reasonably search for and disclose responsive documents, 5 U.S.C. § 552(a)(3)(C)–(D); and 2) failing to promptly produce and unlawfully withholding responsive documents, 5 U.S.C. § 552(a)(3)(A).

63. BLM's violations of FOIA have deprived TWS of its right to receive public records and injured TWS's interests. These violations will continue absent the relief requested herein.

64. TWS is therefore entitled to declaratory and injunctive relief holding that BLM violated FOIA and requiring the agency to conduct a new search for the requested records using the date of the search as the cut-off date and to produce all responsive records promptly, as well as to reasonable costs of litigation and attorneys' fees.

### THIRD CLAIM FOR RELIEF (HUD)
### VIOLATION OF FOIA: FOIA REQUEST NO. 25-FI-HQ-03256

65. TWS realleges and incorporates by reference all preceding paragraphs.

66. TWS has a statutory right to a timely determination on its FOIA request, prompt production of the non-exempt records sought, and an estimated completion date for the request. 5 U.S.C. § 552(a)(3)(A), (a)(6)(A), (a)(7)(B)(ii).

67. In response to TWS's FOIA Request No. 25-FI-HQ-03256, HUD failed to provide a determination within FOIA's twenty-day deadline and failed to provide an estimated date of completion upon request. More than 6 months after receiving the request, the agency has still not produced any responsive records nor made a final determination. The agency has not invoked any exemptions under FOIA that allow it to withhold any records or delay or bypass

FOIA's deadline and disclosure requirements.

68.     By failing to produce all responsive records promptly, HUD has constructively denied TWS's request and is unlawfully withholding records.

69.     Accordingly, HUD has violated FOIA in the following separate ways: 1) failing to provide a determination by the statutory twenty-day deadline; 2) failing to provide an estimated date of completion; and 3) failing to promptly produce and unlawfully withholding responsive documents. 5 U.S.C. § 552(a)(3)(A), (a)(6)(A), (a)(7)(B)(ii).

70.     HUD's violations of FOIA have deprived TWS of its right to receive public records and injured TWS's interests. These violations will continue absent the relief requested herein.

71.     TWS is therefore entitled to declaratory and injunctive relief stating that HUD violated FOIA and requiring the agency to promptly produce responsive records, as well as to reasonable costs of litigation and attorneys' fees.

### FOURTH CLAIM FOR RELIEF (DOI AVSO)
### VIOLATION OF FOIA: FOIA REQUEST NO. DOI-2025-010004

72.     TWS realleges and incorporates by reference all preceding paragraphs.

73.     TWS has a statutory right to a timely determination on its FOIA request, prompt production of the non-exempt records sought, and an estimated date of completion for the request. 5 U.S.C. §§552(a)(3)(A), (a)(6)(A), (a)(7)(B)(ii).

74.     In response to TWS's FOIA Request DOI-2025-010004, DOI failed to provide a determination within FOIA's twenty-day deadline and failed to provide an estimated date of completion upon request. More than 3 months after receiving the request, the agency has still not produced any responsive records nor made a final determination. The agency has not invoked any exemptions under FOIA that allow it to withhold any records or allow it to delay or bypass

FOIA's deadline and disclosure requirements.

75. By failing to produce all responsive records promptly, DOI has constructively denied TWS's request and is unlawfully withholding records.

76. Accordingly, DOI has violated FOIA in the following separate ways: 1) failing to provide a determination by the statutory twenty-day deadline; 2) failing to provide an estimated date of completion; and 3) unlawfully withholding responsive documents. 5 U.S.C. §§ 552(a)(3), (a)(6), (a)(7)(B)(ii).

77. DOI's violations of FOIA have deprived TWS of its right to receive public records and injured TWS's interests. These violations will continue absent the relief requested herein.

78. TWS is therefore entitled to declaratory and injunctive relief stating that DOI violated FOIA and requiring the agency to promptly produce responsive records, as well as to reasonable costs of litigation and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, The Wilderness Society respectfully prays that this Court:

A. Declare, hold, and adjudge that the Department of Interior, U.S. Bureau of Land Management, and Department of Housing and Urban Development have violated FOIA by failing to promptly produce and unlawfully withholding responsive documents, failing to provide timely determinations, failing to conduct an adequate search, and/or failing to provide an estimated date of completion in the ways described above;

B. Order the Federal Defendants to comply with FOIA by producing all non-exempt public records in response to each of the four FOIA requests discussed above within thirty days;

C. Award TWS its reasonable attorneys' fees and litigation costs pursuant to 5

U.S.C. § 552(a)(4)(E);

      D.      Grant such other and further relief as TWS may hereinafter request or as the Court deems just and proper.

Dated: January 6, 2026.

Respectfully submitted,

*/s/ Todd C. Tucci*
Todd C. Tucci (D.C. Bar #ID0001)
ttucci@advocateswest.org
Elizabeth H. Potter (OSB #105482)*
epotter@advocateswest.org
Advocates for the West
P.O. Box 1612
Boise, ID 83701
(208) 342-7024

*\*Pro Hac Vice application pending*

Attorneys for Plaintiff

COMPLAINT           18